## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| In re | : | |
| | : | |
| **LINDSEY CATHERINE HOLMES,** | : | Civ. No. 18-12495 (KM) |
| | : | |
| **Debtor** | : | **OPINION** |
| | : | |
| | : | |
| **LINDSEY CATHERINE HOLMES,** | : | Bankruptcy Case |
| | : | No. 15-14034 (RG) |
| **Appellant,** | : | |
| v. | : | |
| | : | |
| **COMMUNITY HILLS** | : | |
| **CONDOMINIUM ASSOCIATION,** | : | |
| **INC.,** | : | |
| | : | |
| **Appellee.** | : | |
| | : | |

### KEVIN MCNULTY, U.S.D.J.:

The debtor, Lindsey C. Holmes, appeals from an order by Judge Rosemary A. Gambardella of the United States Bankruptcy Court for the District of New Jersey, entered on remand from a prior appeal. (DE 1-2). Judge Gambardella has denied confirmation of the debtor's modified plan and dismissed the voluntary petition for relief under Chapter 13 without prejudice. (DE 1-2; *see generally* No. 15-cv-6834, DE 9). The plan, the bankruptcy judge found in a careful and detailed decision, was not feasible because a lien for condominium charges could not be modified as a matter of law.

At issue is the scope of 11 U.S.C. § 1322(b)(2). This anti-modification clause, particularly as it interacts with state law, gives rise to a difficult issue of interpretation that has divided the courts; in picking a side, I by no means

intend to criticize any court, including the bankruptcy court here, that has seen the matter differently. For the reasons set forth below, I will reverse the dismissal of the Chapter 13 petition and remand for a redetermination of the feasibility of the proposed Plan.

## PREFACE: MY 2016 OPINION

The prior remand to the bankruptcy court was structured by the analysis in my prior Opinion. (2016 Op., DE 9) For clarity, I will simply reprint here the most pertinent portions of that Opinion, indented and in a smaller font:

> This appeal presents a single issue: whether a condominium association lien is a security interest in the debtor's principal residence, and hence subject to the "anti-modification" clause, 11 U.S.C. § 1322(b)(2). That issue of law is reviewed *de novo*. *See In re American Pad & Paper Co.*, 478 F.3d 546, 551 (3d Cir. 2007); *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005). For the reasons set forth below, however, the decision of the bankruptcy court must be REMANDED for factual findings pertinent to that issue.

> ### I.    BACKGROUND

> Ms. Holmes is a condominium unit owner; Community Hills is the condominium association. Community Hills claims a lien on Holmes's unit representing unpaid condominium assessments. The unit was on the verge of a Sheriff's sale when, on March 9, 2015, Holmes filed a Chapter 13 petition.

> Bank of America, which holds a mortgage on the unit, filed a proof of claim of $206,525.23. The value of the property was estimated at $85,000. There seems to be no dispute that the mortgage lien easily exhausts the equity in the property. Holmes filed a schedule showing a net disposable income of $200 per month. She proposed a plan whereby she would pay $200 per month.

> Under the "anti-modification clause" of 11 U.S.C § 1322(b)(2), certain security interests relating to the debtor's principal residence cannot be

2

modified. It follows that a plan that relies on the modification of such a principal-residence lien is not feasible as a matter of law; confirmation may therefore be denied without exploration of other pertinent issues. That is what happened here. The bankruptcy court held that Community Hills' lien on the condominium could not be modified, and therefore declined to confirm the plan. It is from that order that Holmes has appealed.

## II. DISCUSSION

### A. *Rones* and the N.J. Condominium Act

Holmes acknowledges that the Community Hills unit is her principal residence. She contends, however, that § 1322(b) nevertheless does not apply.

I am initially guided by *In re Rones*, 551 B.R. 162, 168 (D.N.J. 2016), in which Judge Wolfson discussed many of the issues presented here. *Rones* starts from the indisputable premise that a Chapter 13 plan may, in general, modify the rights of holders of secured claims. *See generally* 11 U.S.C. § 506(a)(1). A nominally secured claim will be considered unsecured, however, to the extent it exceeds the value of the collateral, and may be "stripped down" or "crammed" to that value. *See United States v. Ron Pair Enters., Inc,* 489 U.S. 235, 239, 109 S. Ct. 1026 (1989).

Section 1322(b)(2) places an important limit on modification of secured claims. It prohibits modification, stripping, or cramming down of claims secured only by a security interest in the debtor's principal residence:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
>    ....
>
>    (2) modify the rights of holders of secured claims, **other than a claim secured only by a security interest in real property that is the debtor's principal residence,** or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims....

11 U.S.C. § 1322(b)(2) (emphasis added). *See Nobelman v. Am. Savings Bank,* 508 U.S. 324, 331–32, 113 S. Ct. 2106 (1993).

There is an exception to the exception—*i.e.,* an avenue of escape from the anti-modification clause of § 1322(b)(2). If the relevant lien, even one on a principal residence, is junior to a lien that exceeds the value of the residence collateral, it is treated as unsecured. Being wholly unsecured, it is of course not secured by a principal residence, and therefore does not fall under § 1322(b)(2). *See in re McDonald,* 205 F.3d 606, 613–14 (3d Cir. 2000); *Rones,* 551 B.R. at 168.

So whether a condominium association's lien for assessments is secured only by a security interest in the debtor's unit might depend (*inter alia*) on whether it is junior to another lien that exhausts the value of the collateral; if it is junior, it might not be secured by anything at all. On that question, *Rones* found the New Jersey Condominium Act to be dispositive. That statute gives the condominium lien a limited priority:

[quoting N.J. Stat. Ann. § 46:8B-21(a) & (b). The statute is set out in an Appendix to this opinion.]

. . . . Thus, under subsection (b), a condominium association's lien is granted priority to the extent of six months' worth of assessments. The condo lien, to that extent, is elevated to first priority. *Rones* reasoned that the condo lien was, at least to the extent of six months' assessments, secured by the principal residence, because it was senior to other liens. It followed, held *Rones,* that § 1322(b) applied.

Another issue arises. Assume *arguendo* that *more* than six months' assessments are in arrears. Under the NJ Act, the lien is senior only to the extent of six months' worth of assessments. Beyond that, it is junior— "subordinate," in the words of the statute. N.J. Stat. Ann. § 46:8B-21(a). Now it is possible to envision a rule that the lien should be bifurcated into a secured (up to six months) and unsecured (beyond six months) component. Thus bifurcated, it would have a hybrid quality; to the extent the lien is

4

unsecured by the unit, it would not be subject to the "no-modification" rule of § 1322(b).

Case law forecloses that approach. The rule is applied broadly, and the exception strictly:

> [I]f even one dollar of a creditor's claim is secured by a security interest in a debtor's principal residence, then the entire claim—both secured and unsecured portions—cannot be modified under Section 1322. *See In re Vidal*, No.'s 12–11758, 12–12319, 12–12340, 12–12563, 2013 WL 441605, *3, 2013 Bankr. LEXIS 496, at *8 (Bankr. D. Del. Feb. 5, 2013) ("If there is even a single dollar of value available for the junior lienholder in the collateral, however, § 1322(b)(2) requires that the plan treat the junior claim as fully secured."); *see also In re Kennedy*, No. 12-11223, 2013 Bankr. LEXIS 2350, at *4 (Bankr. D. Del. June 10, 2013). This rule is known as the "one dollar rule."

*In re Rones*, 551 B.R. at 168.

Applying the "one dollar rule," *Rones* held that "because a portion of the Lien was secured by a security interest in the debtor's principal residence, no portion of the Association's lien could be stripped off under Section 1322." 551 B.R. at 171 (citing *In re McDonald*, 205 F.3d at 613–14).

### B.    Security interest vs. statutory lien

But hold on, says Holmes. The *Rones* analysis does not even come into play unless the lien at issue is a "security interest." Otherwise, § 1322(b)(2), by its plain language, does not apply at all.

A "security interest," as the term is used in § 1322(b)(2) and elsewhere, is defined as a "lien created by an agreement." 11 U.S.C. § 101(51). As such, it is to be distinguished from a "statutory lien," *i.e.*, one "arising solely by force of a statute on specified circumstances or conditions." [1] The categories are mutually exclusive. *See In re Young*, 477

---

[1]    (53) The term "statutory lien" means lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien,

B.R. 594 (W.D. Pa. 2012).

*Rones,* says Holmes, did not squarely face that definitional issue. Indeed, it appears that *Rones* accepted the conclusion of the bankruptcy court that the lien was created by agreement: "[T]he Bankruptcy Court itself observed when determining whether the Lien was consensual or statutory, [that] the Condominium Act did not create the Lien—it was created by the Master Deed .... [T]he Condominium Act merely altered the priority of a portion of the Lien." 551 B.R. at 171.

But the NJ Act seemingly *can* operate to create a lien; consider the language of N.J. Stat. Ann. § 46:8B-21(a), quoted above ("The association shall have a lien on each unit for any unpaid assessment ... upon proper notice to the appropriate unit owner"). And the subsection (b) priority operates to elevate, not just any old lien, but "[a] lien recorded pursuant to subsection a."

So it is not so simple to say that there is a security interest (*i.e.,* one arising from agreement), as to which the Act merely sets a priority. Remember, the condominium association's lien is secured by the unit (which is underwater on its mortgage) *only* to the extent it can be regarded as senior to the mortgage. So the priority issue under the State Act is inextricably intertwined with the issue of whether the lien is secured by the unit *at all.*

There is more. The § 1322(b) no-modification rule applies to a lien secured *only* by a security interest (*i.e.,* a contractual lien). But this lien, says Holmes, is *also* secured by a statutory lien, defined as one that arises

---

whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

11 U.S.C. § 101(53).

The other possibility, not relevant here, is a "judicial lien," *i.e.,* one "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36).

"*solely* by force of a statute." Those dueling claims of exclusivity seem to reinforce the notion that the contractual and statutory liens, assuming both are present, must be considered separately.

The case law has meandered as to whether a condominium lien like this one is a statutory or consensual one. *See In re Rones,* 531 B.R. 526 (Bankr. D.N.J. 2015) (surveying case law), *rev'd,* 551 B.R. 162 (D.N.J. 2016). As the Bankruptcy Court observed in *Rones,* the issue may depend on how and when a lien arose. A consensual lien arises from the purchase of the unit, but depends on other facts, such as the content of the master deed and presumably the existence of an arrearage. A statutory lien, too, depends on facts such as the filing of the master deed, notice to the unit holder, and recordation. And the operation of priority rules, particularly where the mortgage exceeds the value of the property, will determine whether the lien is secured at all.

I think that the bankruptcy court should have first crack at these issues. Some of these ramifying issues may be mooted by a clear set of facts. Here, says Holmes, by contrast with *Rones,* the bankruptcy court never made a finding as to whether this lien was created by contract or only by statute. Community Hills did not submit the master deed or by-laws for the court's consideration. It is not clear that a security interest, in the sense of a lien arising by contract, perfected and secured by equity in the unit, even exists. To determine that, the bankruptcy court must make specific findings as to the facts and determine the priority of such a security interest.

The parties have not pointed this court to any facts about the creation or perfection of any contractual lien, notice to the unit holder under the State Condominium Act, recordation, or other pertinent facts. Rather, the facts and contentions seem to have evolved and tumbled out over the course of multiple attempts by the debtor to propose a feasible plan. It is not at all clear that the bankruptcy court was given a fair opportunity to assess the issues.

### III.   CONCLUSION

For the foregoing reasons, the order of the bankruptcy court is reversed and remanded for further consideration. The parties shall present the matter to the bankruptcy judge in a manner that permits the judge to make factual findings as to the existence, priority, and recordation of (a) any security interest; (b) any statutory lien; (c) the priority of such; and (d) relatedly, whether any such lien is secured by equity in the property. I express no view as to whether, even if all of these issues were decided favorably to the debtor, the plan would be a feasible and confirmable one.

*     *     *

On remand, the bankruptcy judge rendered a decision in which she again declined to confirm the Plan, leading to the current appeal.

### I.   BACKGROUND[2]

With my prior opinion as background, I will first review the facts most pertinent to this appeal and then discuss the legal issues.

---

[2]   Facts are drawn from the record supplied on appeal. (DE 2, 3 (listing items to be considered from the record on appeal pursuant to F.R.B.P 8009, and directing that such items may be found on the bankruptcy docket)).

All citations to items on the docket of the bankruptcy court [BP No. 15-14034] will be abbreviated as "BR DE." Further, certain items will be abbreviated as follows:

| | | | |
|---|---|---|---|
| Bankr. Op. | = | Judge Gambardella's 2017 Opinion, | |
| | | reported at 573 B.R. 549 | [DE 6-4] |
| Bankr. Order | = | Judge Gambardella's 2017 Order | [DE 1-2] |

Citations to my prior order and opinion filed in Civil No. 15-6834 will be abbreviated as follows:

| | | | |
|---|---|---|---|
| 2016 Op. | = | This Court's 2016 Opinion | [15-6834, DE 9] |
| 2016 Order | = | This Court's 2016 Order | [15-6834, DE 10] |

### a. Facts

#### i. The Mortgage

Ms. Holmes owns a condominium unit at 252 West Kinney Street, Newark, New Jersey (the "Condo") (Bankr. Op. p. 2), which is part of Community Hills Condominium Association Inc. ("Community"). (*Id.* p. 3).[3] It is undisputed that the Condo is Ms. Holmes's principal residence. (*Id.*).

The Condo is subject to a mortgage lien in the amount of $206,523.23 (the "Mortgage"), held by Bank of America, N.A., as the successor to Countrywide Home Loans, Inc. ("Countrywide" or "Mortgagee"). (Bankr. Op. 3). The estimated value of the property is just $85,000. (*Id.*).

The Condo was purchased by Deed, recorded on April 19, 2007[4] with the Register's Office in Essex County, New Jersey. (*Id.* p. 2–3). That Deed referenced a Master Deed. (*Id.* p. 3). Paragraph 7.02 of the Master Deed, titled "Lien in Favor of the Association," states in pertinent part:

> All charges and expenses chargeable to any Unit constitute a lien against that Unit in favor of the Association. Those liens are prior to all other liens except (a) assessments, liens and charges for taxes past due and unpaid on the Unit and (b) payments due under bona fide and duly recorded Mortgage instruments, if any, except to the extend modified by any applicable New Jersey or federal law . . .

(Bankr. Op. p. 3). Community has filed condominium liens against the Condo in the aggregate amount of $27,358.71 for unpaid condominium fees and other charges. (Bankr. Op. p. 3. *See also id.* (discussing Paragraph 16.03, titled "Master Deed Provisions and Exhibits to be a Covenant Running with the Land.")).

---

[3]     Community is a non-profit condominium association organized pursuant to N.J.S.A 15A:1-1 *et seq.* and N.J.S.A. 46:8B-1 *et seq.*, the New Jersey Condominium Act and by Master Deed and By-laws. (Bankr. Op. p. 3).

[4]     On page 3 of the bankruptcy opinion, there is a statement that the deed was recorded on August 19. (Bankr. Op. 3). This was seemingly just a slip of the pen; as correctly stated on page 2 of that same opinion, the deed was filed on April 19.

### ii. The First Foreclosure Complaint

On August 18, 2008, Countrywide, which held a first mortgage on the Condo, filed a complaint in foreclosure against the Condo (hereinafter, the "First Foreclosure Complaint"), which also named Community as a defendant. (Bankr. Op. p. 4).

### iii. The 2008 Lien

On September 2, 2008 and October 15, 2008, Community sent notices warning Ms. Holmes that failure to pay the delinquent amounts might result in the association's filing a lien against the Condo. The notices advised that the Association had directed its then-counsel, Stark & Stark, P.C., to prepare and file a Notice and Assessment of Lien against the Condo. (*Id.*). On December 19, 2008, Community recorded a first lien against the Condo in the amount of $5,822.25 (hereinafter, the "2008 Lien"). (*Id.*).

### iv. The Second Foreclosure Complaint

On March 20, 2009, Countrywide filed another complaint in foreclosure against the Condo (hereinafter, the "Second Foreclosure Complaint"). (*Id.* pp. 4–5). The Second Foreclosure Complaint named Community as a defendant and specifically referred to the 2008 Lien in the amount of $5,822.25. (*Id.* p. 5).

### v. The 2009 Lien and Money Judgement

On April 17, 2009, Community recorded a lien on the Condo in the amount $4,348.00 for unpaid common expense assessments and other charges (hereinafter, the "2009 Lien"). (*Id.*).

On October 2, 2009, after filing an action against Ms. Holmes in the Superior Court of New Jersey, Law Division, Special Civil Part (hereinafter, the "Special Civil Action"), Community obtained a money judgment for unpaid fees and charges in the amount of $11,899.00. (*Id.*). Community sent multiple letters to Ms. Holmes regarding the Special Civil Action. (*Id.*).

### vi. Satisfaction of 2008–09 liens

On April 9, 2010, Community sent Ms. Holmes a letter advising her of the 2009 lien (then about a year old), and sent a copy of the letter to

Countrywide. (*Id.*). On May 28, 2010, Community advised Countrywide of the payoff amount of $18,707.41, representing the total delinquent amount owed to Community. (*Id.*).

At some point, Community's 2008 and 2009 liens were, apparently, satisfied. (*Id.*; *see also* Feldman Cert., Bankruptcy DE 115-1, ¶ 6).

### vii. Four remaining Liens and dismissals of foreclosure actions

I turn to the period from December 2011 through March 2014. In that period, Community filed four additional liens for unpaid common expense assessments and other charges, as described in this section. These are the liens that make up its current Proof of Claim in bankruptcy. (*Id.* p. 5). All of the four remaining liens remain unsatisfied. (*Id.* p. 6). During this period, the 2008 and 2009 foreclosure actions were dismissed. (*Id.* p. 4–5).

#### 1. December 2011 Lien

On November 4, 2011, Community sent Ms. Holmes notice of its intent to file a lien. On December 15, 2011, Community recorded the first lien in the amount of $5,237.38 (hereinafter, the "December 2011 Lien"). (*Id.*).

#### 2. Dismissal of the First Foreclosure Complaint

On January 26, 2012, the First Foreclosure Complaint was dismissed without prejudice. (*Id.* p. 4).

#### 3. March 2012 Lien

On March 5, 2012, Community recorded a second lien in the amount of $5,186.00 (hereinafter, "March 2012 Lien"). (*Id.*). On March 16, 2012, Ms. Holmes and Countrywide were sent Notice that the March 2012 Lien had been recorded. (*Id.*).

#### 4. Dismissal of the Second Foreclosure Complaint

On January 24, 2013, the Second Foreclosure Complaint was dismissed without prejudice. (*Id.* p. 5).

#### 5. September 2013 Lien

On September 25, 2013, Community recorded the third of the four liens at issue here, in the amount of $7,375.28 (hereinafter, "September 2013 Lien").

(*Id.* pp. 5–6). On October 7, 2013, Ms. Holmes and Countrywide were sent a Notice that the September 2013 Lien had been recorded. (*Id.* p. 6).

### 6. March 2014 Lien

On March 21, 2014, Community recorded a fourth lien in the amount of $9,560.05 (hereinafter, "March 2014 Lien"). The bankruptcy court's record on remand did not contain evidence that the Debtor and Mortgagee were given notice of the recordation of the March 2014 lien. (Bankr. Op. p. 46).

### viii.  Chapter 13 Proceeding

On March 9, 2015, Ms. Holmes filed a petition under chapter 13 of the Bankruptcy Code. (*Id.* p. 6). On July 20, 2015, Community filed an Amended Proof of Claim in the total amount of $36,585.06 for unpaid assessments, late fees, attorney's fees and other charges, comprising $27,358.71 secured by the four liens and an unsecured claim of $9,226.35. (*Id.*).

On March 20, 2015, Community filed a motion to dismiss Ms. Holmes's Case, or, in the alternative to vacate the automatic stay, and for prospective relief. (*Id.*). On several occasions, the motion was adjourned to allow Ms. Holmes to set forth a feasible chapter 13 plan. (*Id.*).

On March 24, 2015, Ms. Holmes filed her first Chapter 13 Plan. (*Id.*). On May 21, 2015, Ms. Holmes filed her second chapter 13 plan. (*Id.*). Finally, on July 24, 2015, Ms. Holmes filed a third modified chapter 13 plan (hereinafter, the "Plan"). (*Id.*).

Each of the three plans proposed to partially avoid the four liens on the Condo, in effect reclassifying a secured claim as partially secured, but mostly unsecured. (*Id.* p. 7). The current Plan seeks to pay Community $1,839.00 as a secured claim representing a "six months superpriority claim," subject to certain statutory requirements. The balance Ms. Holmes proposes to treat as an unsecured claim. (*Id.*). Community filed an objection arguing that its claim cannot be modified. (*Id.*).

### b. Procedural History

On August 18, 2015, Judge Gambardella held that Community's secured claim could not be modified. (*Id.* p. 7). It followed, Judge Gambardella reasoned, that the Plan was not feasible. (*Id.*). Thus, on August 27, 2015, Judge Gambardella entered an Order denying Confirmation of the Plan and dismissing the chapter 13 petition without prejudice. (*Id.*). Ms. Holmes appealed. (*Id.*).

On September 1, 2015, Judge Gambardella granted a stay pending appeal. (*Id.* p. 8). In reaching that decision, the bankruptcy judge acknowledged a split of authority on the modification issue. (*Id.* pp. 7–8) (discussing *In re Robinson,* No. 11-26981, 2012 WL 761251, at *5 (Bankr. D.N.J. 2012); *In re Rones,* 531 B.R. 526 (Bankr. D.N.J. 2016) (hereinafter, "*Rones I*")).

On September 16, 2016, I filed a written Opinion and Order reversing the Bankruptcy Court's order of dismissal and remanding the matter for further proceedings. (2016 Op.; 2016 Order). That opinion is extensively quoted at pp. 2–8, *supra.* My 2016 Opinion directed the Bankruptcy Court to do the following on remand:

> make factual findings as to the existence, priority, and recordation of (a) any security interest; (b) any statutory lien; (c) the priority of such; and (d) relatedly, whether any such lien is secured by equity in the property.

(Bankr. Op. p. 9).

After taking several submissions and hearing oral argument, on September 19, 2017, the bankruptcy court filed a lengthy opinion. (2017 Bankr. Op.). That opinion decided several issues, each of which is now the subject of the current appeal.

First, the bankruptcy court determined that Community's claim was supported only by a security interest, to the exclusion of a statutory lien.

Second, the bankruptcy court determined that Community's claim met the statutory requirements of the Condominium Act to achieve super-priority status for its lien.

Third, the bankruptcy court ruled that under the anti-modification clause in § 1322(b)(2), modification of Community's claim was barred and that the proposed plan therefore was not feasible.

## II.  Analysis

### a.  Standard of review

A District Court has jurisdiction to hear appeals of final judgments and orders of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). A district court reviews "'the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof.'" *In re American Pad & Paper Co.,* 478 F.3d 546, 551 (3d Cir. 2007) (quoting *In re United Healthcare Sys., Inc.,* 396 F.3d 247, 249 (3d Cir. 2005) (quotation and citation omitted)). A district must separately analyze mixed findings of fact and conclusions of law, and appropriately apply the applicable standards—clearly erroneous or *de novo*—to each component. *Meridian Bank v. Alten,* 958 F.2d 1226, 1229 (3d Cir. 1992) (citing *In re Sharon Steel Corp.,* 871 F.2d 1217, 1222 (3d Cir. 1989) and *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 102–03 (3d Cir. 1981)). "The district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

### b.  Discussion

The issue involves the application of section 1322(b)(2) of the Bankruptcy Code, which generally provides for modification of liens, but also contains what I will call the "anti-modification clause": "Subject to subsections (a) and (c) of this section, the plan may – . . . modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." *See* 11 U.S.C. § 1322(b) (anti-modification clause *italicized*). Thus the Code grants a court the power to modify the rights of the holder of a secured claim "*other than* a claim secured

14

*only* by a security interest in real property that is the debtor's principal residence."

Ms. Holmes argues that the bankruptcy court erred in holding that the Community's condominium lien was unitary and subject to the anti-modification clause, and therefore, as a whole, could not be modified. (DE 5). She makes arguments under both the Bankruptcy Code and the New Jersey Condominium Act.

Under the Bankruptcy Code, Ms. Holmes first argues that Community's claim does not fall within the anti-modification clause of § 1322(b)(2). She argues that the claim is supported solely by a statutory lien, not a security interest, and therefore does not fall within the anti-modification clause. Alternatively, she concedes that the claim is supported by a consensual security interest, but says that it is *also* supported by a statutory lien. The claim therefore is not secured "only" by a security interest; it follows that it remains within the scope of the anti-modification clause, § 1322(b)(2).[5]

I also consider whether, under the New Jersey Condominium Act, Community obtained priority status for its recorded lien(s). As stated in my prior 2016 Opinion, the issue is significant because the mortgage lien is sufficient to exhaust the equity in the property; unless Community's claim has priority over the mortgage lien, it is not a secured claim at all. Ms. Holmes makes several state-law arguments as to why Community's liens are junior to the mortgage lien. First, Ms. Holmes argues, the mortgage liens were first in time. Second, she argues that Community's liens are not entitled to statutory priority because Community did not properly notify the Mortgagee before recording them. Third, Ms. Holmes argues that Community did not properly notify her before recording its liens.

---

[5]     In further support, Ms. Holmes also argues that bifurcation effectuates the purpose of the Bankruptcy Code. In addition, she makes the alternative argument that Community's claim is subject to modification under § 1332(c)(2) as a short-term obligation. I briefly deal with those arguments *infra*.

### i. The Bankruptcy Code and the New Jersey Condominium Act

The premise of this discussion—more about this later—is that a consensual security interest and a statutory lien have mutually exclusive definitions; a lien must be one or the other. Courts, even within this District, are split on whether a claim for condominium assessments is secured by a statutory lien, a security interest, or both. *Compare Rones I* at 529–34, *with In re Smiley*, 569 B.R. 377, 393 (Bankr. D.N.J. 2017), as corrected (Jan. 26, 2018). *See also, e.g., In re Spradley*, No. 18-CV-263 (PGS), 2019 WL 460224 (D.N.J. Feb. 6, 2019); *In re Keise*, 564 B.R. 255, 264 (Bankr. D.N.J. 2017) (Kaplan, J.). Some have held that a claim for condo assessments is supported by both a security interest and a statutory lien. *See e.g., Smiley*, 569 B.R. at 393. Others have determined that it is supported solely by a security interest. *See Rones I* at 529–34. Still other courts (albeit outside of this district, and operating under the laws of other states) have determined that it is supported solely by a statutory lien. *Young v. 1200 Buena Vista Condominiums*, 477 B.R. 594, 602 (W.D. Pa. 2012). Here, the bankruptcy court, citing *Rones I*, held that, under the Bankruptcy Code, Community's claim for condo assessments is supported only by a security interest. Bankr. Op., *In re Holmes*, 573 B.R. 549, 574 (Bankr. D.N.J. 2017).

Packed within that holding are several issues of statutory interpretation, both state and federal. "In interpreting a statute, the starting point is the language of the statute itself." *United States v. Gollapudi*, 130 F.3d 66, 70 (3d Cir. 1997) (internal citations omitted). "In most situations, the plain language rule is the preferred method of statutory interpretation." *Id.* (internal citations omitted). "Only the most extraordinary showing of contrary intentions" in the legislative history will justify a departure from that language." *Id.* (internal citations omitted). Under state law, the preference for plain meaning is similar. In interpreting state statutes, the court "should not resort to extrinsic interpretative aids when the statutory language is clear and unambiguous, and susceptible to only one interpretation." *Daidone v. Buterick Bulkheading*, 924

A.2d 1193, 1198 (N.J. 2007) (internal citations omitted). That being said, "if there is ambiguity in the statutory language that leads to more than one plausible interpretation, [the court] may turn to extrinsic evidence, including legislative history, committee reports, and contemporaneous construction." *Id.*

### 1. § 1322(b)(2) of the Bankruptcy Code

First, I must interpret § 1322(b)(2) of the Bankruptcy Code. Under a Chapter 13 plan, a claim may be modified, or "crammed down," to the extent that it is not secured. Section 1322(b)(2) provides that secured claims may also be modified, subject to an exception, the anti-modification clause:

> [A plan may] modify the rights of holders of secured claims, **other than a claim secured only by a security interest in real property that is the debtor's principal residence**, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2) (emphasis added).

I start from the premise that "only" means what it says in § 1322(b) ("*only* by a *security interest* in real property that is the debtor's *principal residence*" (emphasis added)). With respect to a "principal residence," it does.[6] I see no basis to conclude that with respect to a "security interest," it doesn't.

As background to the determination of whether a claim is secured "only by a security interest," I must consider the three categories of liens defined in the Bankruptcy Code: (1) a security interest, (2) a statutory lien, and (3) a judicial lien.

---

[6]     Thus a claim secured by a principal residence *plus* other property is not covered. *In re McDonald*, 205 F.3d 606, 613 (3d Cir. 2000). ("[W]e have read the word 'only' in the anti-modification clause's phrase, 'secured only by a security interest in ... the debtor's principal residence,' to mean that the clause's protection is unavailable when the loan is secured not just by the debtor's residence but by other property as well." (citing *Hammond v. Commonwealth Mortgage Corp.*, 27 F.3d 52 (3d Cir. 1994); Wilson v. Commonwealth Mortgage Corp., 895 F.2d 123, 126–29 (3d Cir. 1990)).

Because there is no dispute that the Condo is real property, and that it is Ms. Holmes's principal residence, I will simplify the remaining discussion by setting those factors aside.

First, a "security interest" is defined as a "lien created by an agreement." 11 U.S.C. § 101(51). *See also United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240 (1989) (observing that consensual liens are "called a 'security interest' by the Code").

Second, a "statutory lien" is defined as a

> lien arising *solely by force of a statute* on specified circumstances or conditions . . . but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

11 U.S.C. § 101(53) (emphasis added).[7] A lien arises "solely by force of statute" when the statute provides that a lien will arise when certain specified circumstances or conditions occur. Those "conditions," however, may not include the presence of a security interest or judicial lien, irrespective of whether such a security interest or judicial lien is dependent on or made effective by a statute. In other words, a statutory lien cannot be based on an agreement to create a lien. *See also* Collier on Bankruptcy App. Pt. 4(e)(i) (16th 2019). PUB. L. NO. 95–598 Report of the Committee on the Judiciary, United States Senate, to accompany S.2266, S. Rep. No. 95-989, 95th Cong., 2d Sess. (1978). ("A statutory lien is only one that arises automatically, and is not based on an agreement to give a lien or on judicial action.").

---

[7] The authoritative Collier treatise provides additional guidance:

> The essence of the definition in section 101(53) is the need, or lack of need, for an agreement or judgment to create the lien. If the lien arises by force of statute, without any prior consent between the parties or judicial action, it will be deemed a statutory lien. . . . If the creation of the lien is dependent upon an agreement, it is a security interest even though there is a statute which may govern many aspects of the lien. The fact that a statute describes the characteristics and effects of a lien does not by itself make the lien a statutory lien.

2 Collier on Bankruptcy P 101.53 (16th 2019).

Third, a "judicial lien" is a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." *Id.* at § 101 (36). That category is not relevant here.

"Although the legislative history indicates that the 'three categories are mutually exclusive', the Bankruptcy Code is devoid of any language that expressly makes that conclusion." *In re Smiley,* 569 B.R. 377, 385 (Bankr. D.N.J. 2017), *as corrected* (Jan. 26, 2018) (quoting H.R. REP. 95–595, 312, 1978 U.S.C.C.A.N. 5963, 6269). That said, the sharp statutory distinction drawn between a security interest and a statutory lien goes a long way toward such a conclusion. To complicate the analysis, however, "[n]otwithstanding the discussion in the legislative history, the Supreme Court dictates that '[p]roperty interests are created and defined by state law.'" *Id.* (quoting *Butner v. United States,* 440 U.S. 48, 54–55 (1979)); *see also Butner,* 440 U.S. at 55 (1979) ("The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests . . .").

With that background, I consider whether Community's claim for delinquent condominium assessments may be modified, or whether it falls within the scope of the § 1322(b) anti-modification clause. The answer depends on whether Community's claim is secured *only* by a security interest on the Condo. On appeal, Ms. Holmes argues that Community's claim is not supported "only by a security interest," for two reasons: (1) the claim is secured solely by a statutory lien; or, in the alternative (2) the claim is secured by both a statutory lien and a security interest, and therefore is not secured "only" by a security interest. Either way, she says, Community's claim can be modified, because it does not fall within the scope of the § 1322(b)(2) anti-modification clause.

### 2. Does a state-law statutory lien exist?

I find that Community does have a state-law statutory lien on the Condo, created under N.J. Stat. § 46:8B-21. (For convenient reference, subsections (a) & (b) of the statute are reprinted as an Appendix at p. 34, *infra.*)

19

To determine whether N.J. Stat. § 46:8B-21[8] creates a lien on the property, I look first to the plain language of the statute:

> The association shall have a lien on each unit for any unpaid assessment duly made by the association for a share of common expenses or otherwise. . . upon proper notice to the appropriate unit owner, together with interest thereon . . . Such lien shall be effective from and after the time of recording in the public records of the county in which the unit is located of a claim of lien stating the description of the unit, the name of the record owner, the amount due and the date when due. Such claim of lien shall include only sums which are due and payable when the claim of lien is recorded and shall be signed and verified by an officer or agent of the association. . . . Except as set forth in subsection b. of this section, all such liens shall be subordinate to any lien for past due and unpaid property taxes, the lien of any mortgage to which the unit is subject and to any other lien recorded prior to the time of recording of the claim of lien.

N.J. Stat. § 46:8B-21(a).[9]

Ms. Holmes argues that, under a plain reading, N.J. Stat. § 46:8B-21 creates a statutory lien. (DE 5, p. 13–14). As stated in my earlier opinion, I think the statute creates a lien of its own force, and does not merely elevate the priority of a lien that has its origin elsewhere, *e.g.,* in the master deed. *See* 2016 Op. (quoted at p. 6, *supra*), reported at 579 B.R. 327, 332 (D.N.J. 2016) (pre-remand, suggesting that N.J. Stat. § 46:8B-21(a) "*can* operate to create a lien"); *see also In re Keise,* 564 B.R. 255, 264 (Bankr. D.N.J. 2017) (Kaplan, J.)

---

[8]     On April 29, 2019, the New Jersey Legislature amended N.J. Stat. § 46:8B-21. NJ LEGIS 68 (2019), 2019 NJ Sess. Law Serv. Ch. 68 (ASSEMBLY 5002) (WEST). In the past, courts have interpreted § 46:8B-21 to be prospective, rather than retroactive. *Chase Manhattan Mortg. Corp. v. Heritage Square Ass'n,* 737 A.2d 682, 682 (App. Div. 1999). Here, I see no clear indication in the amended language would apply retroactively. NJ LEGIS 68 (2019), 2019 NJ Sess. Law Serv. Ch. 68 (ASSEMBLY 5002) (WEST). Thus, I will apply the statute as it existed when the liens were filed and it was construed by the bankruptcy court. *See* N.J. Stat. § 46:8B-21; *see also* NJ Sess. Law Serv. Ch. 190 (SENATE 2196) (WEST).

[9]     Under Section (b), a lien recorded pursuant to Section (a) "shall have a limited priority over prior recorded mortgages." N.J. Stat. § 46:8B-21(b). I discuss the priority issue at Section II.b.ii, below.

("The Condominium Act explicitly provides for the creation of a lien."), *rev'd and remanded on other grounds*, No. 17-cv-1832, 2018 WL 624105 (D.N.J. Jan. 30, 2018) (Wolfson, J.). Irrespective of any security agreement, and "solely by force of the statute," the association "shall" have a lien for delinquent assessments upon notice, with such lien becoming effective upon proper recordation. N.J. Stat. § 46:8B-21(a). Here, I think "shall" signifies that an event is mandatory, or that it will occur inevitably or by definition.[10]

The statute here provides that if certain events occur, the association shall have a lien. Those events—an unpaid assessment for a share of common

---

[10] Of course, the word "shall" has several meanings. For example, Black's Law Dictionary (10th ed. 2014) defines "shall" as:

> 1. Has a duty to; more broadly, is required to . . . This is the mandatory sense that drafters typically intend and that courts typically uphold.
>
> 2. Should (as often interpreted by courts) . . .
>
> 3. May . . . When a negative word such as not or no precedes shall (as in the example in angle brackets), the word shall often means may. What is being negated is permission, not a requirement.
>
> 4. Will (as a future-tense verb) . . .
>
> 5. Is entitled to <the secretary shall be reimbursed for all expenses>.

I was taught long ago that the meaning of shall and will depends on whether they are stated in the first person. A revered (if not infallible) source expressed the distinction with characteristic wit:

> **Shall. Will**. In formal writing, the future tense requires *shall* for the first person, *will* for the second and third. The formula to express the speaker's belief regarding a future action or state is *I shall*; *I will* expresses determination or consent. A swimmer in distress cries, "I shall drown; no one will save me!" A suicide puts it the other way: "I will drown; no one shall save me!" In relaxed speech, however, the words *shall* and *will* are seldom used precisely; our ear guides us or fails to guide us, as the case may be, and we are quite likely to drown when we want to survive and survive when we want to drown.

W. Strunk and E.B. White, *The Elements of Style,* p. 58 (4th ed. 2000). The distinction seems to have fallen by the wayside, linguistically speaking. In statutes, "shall" now cries out, not to be rescued from drowning, but to be misunderstood. "Must" is usually a better choice when that is what is meant. *See* Federal Plain Language Guidelines, https://plainlanguage.gov/guidelines/conversational/shall-and-must.

expenses, proper notice to the appropriate unit owner, effectiveness upon recordation—have occurred. None of those preconditions include the existence of a contractual agreement. It follows that Community possesses a lien under N.J.S. § 46:B-21(a), one which flows from the statute and does not depend on the Master Deed or any other consensual arrangement.

### 3. Does a security interest also exist?

I also find that Community's claim is also supported by a security interest created by the Master Deed.

The Master Deed is a consensual agreement signed by Ms. Holmes, which states in pertinent part: "all charges and expenses chargeable to any Unit constitute a lien against that Unit in favor of the Association." (Master Deed ¶ 7.02). Thus, like the bankruptcy court in this case, I acknowledge that the claim is supported by a security interest. Like the bankruptcy court in *In re Keise*, however, I conclude that this security interest exists in parallel with, rather than in lieu of, the statutory lien. *See* 564 B.R. at 264.[11]

### 4. Does the existence of a security interest rule out the existence of a statutory lien?

The bankruptcy court here was "not convinced that N.J.S.A. 46:B-21(a) operates to create a lien that is independent of the Master Deed." (Bankr. Op. 40 (citing *Rones I* at 534)). It gives me pause that the learned bankruptcy judge reached a conclusion contrary to mine. I therefore consider the matter further to isolate the source of the evident disagreement.

The bankruptcy court's analysis rests on the view that, under the Code definitions, the three categories of lien are mutually exclusive. That view that has good support. The Code definition bespeaks an attempt to preserve the

---

[11]     There is no reason to think, by the way, that the application of § 1322(b) in the condominium context was unanticipated by the legislature. By the time this statute was enacted, condominium ownership was not a novel concept. *See* Patrick J. Rohan, Condominium Housing: A Purchaser's Perspective, 17 STAN. L. REV. 842, 844 (1965) (Indicating that by 1965, condominium enabling statutes had been enacted in the District of Columbia and forty-three states.).

22

distinction between a statutory lien and a security interest: thus a statutory lien "does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute." 11 U.S.C. § 101(53); *see also* discussion at Section II.b.1, *supra*.

Assume, then, that under the Code, any *single lien* must be either a security interest or a statutory lien. Even so, there is no text or even legislative history suggesting that a *single claim* cannot be supported by more than one category of lien. Two liens—one statutory, and the other a security interest— can coexist and support the same claim without violating the principle that any particular lien must be one thing or the other. To say that a single claim may be supported by both a statutory lien and a separate consensual security interest is not to say that the two merge, or are the same thing.

On that point, I find the analysis in *In re Keise* persuasive.[12]

[B]oth parties view the Association's claim as enforceable by a single lien. In contrast, this Court views the Association's claim as secured simultaneously by two separate liens—one consensual lien created by the Declaration, and one statutory lien created by the New Jersey Condominium Act—with each lien available to the Association to enforce its claim. Indeed, each lien offers both benefits and burdens with regard to creation, perfection and enforcement. By way of example, creation of a lien under the Act requires a detailed process of recording notices, not similarly necessary to enforce the lien created under the Declaration. Likewise, the Act grants a limited priority for the statutory lien, unavailable to the Association absent application of the Act.

---

[12]    A cynical reader might respond "Of course he does"; *Keise* cites and relies on my own 2016 Opinion in this case. I do not cite it as circular justification for my own view, however; rather, I note that it usefully supplements my analysis from the perspective of an experienced bankruptcy practitioner and judge. The bankruptcy court's decision in *Keise* remains persuasive authority, by the way; it was reversed and remanded by the district court, but on different grounds. The district court remanded for further fact finding as to whether the association in question was a condominium, or alternatively a homeowners' association, which would not be subject to the Condominium Act. *In re Keise,* 2018 WL 624105 (Jan. 30, 2018) (Wolfson, J.).

564 B.R. 255, 263–64 (Bankr. D.N.J. 2017).

The bankruptcy court's opinion here points out that the statutory lien could not exist if a Master Deed had never been filed (Bankr. Op. p. 41–42 (citing N.J. Stat. §§ 46:8B-8 & 9)). In a but-for sense, that is true—no condo, no lien—but I do not find that the statutory lien is legally dependent on the master deed for its vitality. A statutory lien under N.J. Stat. § 46:8B-21 has independent force. It arises as a matter of law, and does not depend on contract or consent for its existence.

Here, a statutory lien under N.J. Stat. § 46:8B-21 arises because certain factual conditions are met (and the existence of a consensual security interest is disqualified as such a condition). Those conditions are the existence of an unpaid assessment and notice to the unit owner. If those facts are present, the lien becomes effective upon recordation. A lien under N.J. Stat. § 46:8B-21, then, does not depend on, refer to, or contemplate the existence of a master deed or other contractual document. Nor does the Condominium Act require that any such document, such as a master deed, contain its own lien-creating language. *See* N.J. Stat. § 46:8B-9.[13] True, there is a requirement that a master deed contain "a statement submitting the land described in the master deed to the provisions of the Condominium Act." N.J. Stat. § 46:8B-9(a). But that general reference, to my way of thinking, stops far short of melding a

---

[13]    That absence cannot be attributed to the drafters of N.J. Stat. Ann. § 46:8B-21 having forgotten about the effect of the master deed or bylaws altogether. For example, the prior version provides that a lien may include late fees, fines, and reasonable attorney's fees only if authorized in a master deed or bylaws. *See* N.J. Stat. Ann. § 46:8B-21(a); *see also In re Keise*, 564 B.R. at 264 ("The Act explicitly states that such fees are recoverable only if there is specific language providing for same; if the legislature had sought to require similar language for the creation of a lien, it could have done so easily. Pointedly, the Act does not require that a master deed include any such language giving rise to a lien."). That being said, that particular clause was removed in the amended statute so that *"any* late fines, fines, expenses, and reasonable attorney's fees imposed or incurred in the collection the unpaid assessment" may be included, regardless of if fees were contemplated in such consensual agreements. NJ LEGIS 68 (2019), 2019 NJ Sess. Law Serv. Ch. 68 (ASSEMBLY 5002) (WEST) (emphasis added).

consensual, master-deed-created lien (if the deed even contains such a provision) with the automatic statutory-lien provision of the Act.

To look at it another way, a statutory lien could arise without any such language being present in the master deed, and conversely a security interest could arise contractually from the master deed without the aid of the statute. Under the Condominium Act, a statutorily-compliant master deed need not provide for the creation of a security interest at all. If it does not, the statutory lien does not therefore cease to operate; the statutory lien has an independent basis. Conversely, the inclusion of a consensual-lien provision in the master deed should not affect the status of the statutory lien, either. The two are simply distinct.[14]

There is a statutory lien here. It follows that even if there is a security interest, I cannot find that Community's claim is "only" secured by a security interest within the meaning of § 1322(b)(2).[15] *See* p. 17, *supra*. For all of these

---

[14]     Thus, under my view that a claim may be supported by more than one category of lien, the bankruptcy court's inquiry into "how the lien first arose" takes on less importance. (Bankr. Op. p. 41) (citing *Rones I* at 533; *Young v. 1200 Buena Vista Condominiums*, 477 B.R. 594, 602 (W.D. Pa. 2012); *In re Stern*, 44 B.R. 15, 19 (Bankr. D. Mass. 1984)).

In addition, for the reasons stated in my earlier opinion, I reject the view that the statute does no more than alter the priority of a lien that has its origin elsewhere. *See* 2016 Op. (portion quoted at p. 6, *supra*). The Condominium Act creates a lien of its own force.

[15]     Community has argued with some force that such a literal reading may harm condominium associations and indirectly shift burdens onto the owners of neighboring units. A partial answer may be found in the legislative purpose behind Section 1332(b), which was not to punish condominiums, but to foster the market for residential mortgages by protecting the interests of lenders/mortgagees:

At first blush it seems somewhat strange that the Bankruptcy Code should provide less protection to an individual's interest in retaining possession of his or her home than of other assets. The anomaly is, however, explained by the legislative history indicating that favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market. See *Grubbs v. Houston First American Savings Assn.*, 730 F.2d 236, 245–246 (CA5 1984) (canvassing legislative history of Chapter 13 home mortgage provisions). It therefore

25

reasons, the Community's claim does not fall within the anti-modification clause of § 1322(b)(2). It is subject to modification, if appropriate, in a Chapter 13 plan.

### ii. Super-priority

Section 46:8B-21(b) creates a limited super-priority—limited, that is, to six months' worth of charges—for the statutory condo assessment lien (or liens) created by N.J. Stat. § 46:8B-21(a). In effect, it elevates the priority of the association's lien (or at least the part of it that covers six months of charges) above that of a prior-filed mortgage. By its terms, it affects the priority of a *statutory lien only*:

> b. A lien recorded *pursuant to subsection a. of this section* [*i.e.,* N.J. Stat. § 46:8B-21(a)] shall have a limited priority over prior

---

seems quite clear that the Court's literal reading of the text of the statute is faithful to the intent of Congress.

*Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 332 (1993) (Stevens, J., concurring) (considering the application of § 1322(b) to bar bifurcation of undersecured mortgage claim into a secured and unsecured component). A condo association lienholder is not a mortgagee under state law. *See JNH Funding Corp. v. Ayed*, 450 N.J. Super. 271, 280-81 (Ch. Div. 2017) ("While a condominium association lienholder may be in a similar position with similar rights to a mortgagee, it is still not a mortgagee by definition.").

The view of § 1322(b) as a mortgagee-friendly statute is reinforced by legislative history. As originally introduced in the House, Section 1322(b)(2) allowed plans to "modify the rights of holders of secured claims or of holders of unsecured claims." H.R. Rep. No. 595, 95th Cong., 1st Sess. 429 (1977). However, after a series of compromises, Congress reached the final anti-modification clause as it is today. H.R. 8200, 95th Cong. (1977). Apparently, §1322(b)(2)'s anti-modification clause was drafted " in response to perceptions, or to suggestions advanced in the legislative hearings . . . that, home-mortgag[e] lenders, performing a valuable social service through their loans, needed special protection against modification thereof (i.e., reducing installment payments, secured valuations, etc.)." *Grubbs v. Houston First Am. Sav. Ass'n*, 730 F.2d 236, 246 (5th Cir. 1984) (reviewing the legislative history).

To be sure, the statute may not be a perfect proxy for the result the legislature was aiming at. Such policy arguments, however, have force only where they do not derogate from the actual wording of the statute. *See In re McDonald*, 205 F.3d 606, 613 (3d Cir. 2000) (citing as a plain-language example § 1322(b)'s application to mortgages "only" secured by a principal residence, and not those secured by other property as well).

recorded mortgages and other liens, except for municipal liens or
liens for federal taxes, to the extent provided in this subsection.

N.J. Stat. § 46:8B-21(b).

This is one important point of diversion between my opinion and that of
the bankruptcy court, as well as certain prior cases. *In re Spradley*, No. 18-CV-
263 (PGS), 2019 WL 460224 (D.N.J. Feb. 6, 2019), for example, held that the
condominium fees were secured by a consensual lien, *i.e.*, a security interest. It
then went on to find that this was a "secured claim" because it partook of the §
46:8B-21(b) priority, which placed it (or six months' worth of it) ahead of the
mortgage. As I interpret the § 46:8B-21(b) priority, however, it explicitly applies
to a *statutory* lien under § 46:8B-21(a), not a security interest that originates
elsewhere. The super-priority may bear on the issue of whether there is any
equity, *i.e.,* whether this is a "secured claim" at all; it does not, however, resolve
the threshold issue of whether the claim (if secured) is secured "only" by a
security interest. The cart is before the horse.

I have already found that Community has a statutory lien (in addition to
the security interest). I will therefore consider whether Community satisfied the
requirements to achieve super-priority for its *statutory* lien. Priority is
important, of course, because the unit is deep underwater on its mortgage (a
$206,000 mortgage debt is secured by a property valued at $85,000). Unless
Community's lien is given priority over the earlier-filed mortgage lien, it is not
secured by any equity at all, and for this additional reason is not a "secured
claim" subject to the anti-modification clause. *See In re McDonald,* 205 F.3d
606, 610, 615 (3d Cir. 2000).

The § 46:8B-21(b) super-priority is subject to six requirements or
conditions. *See* N.J. Stat. § 46:8B-21(b)(1)–(6).[16] Most are irrelevant or
undisputed; the two pertinent to this appeal are subsections (b)(2) and (b)(6).

---

[16]     First, "the amount of [the condo assessment lien] shall not exceed the aggregate
customary condominium assessment against the unit owner for the six-month period
prior to the recording of the lien." N.J. Stat. § 46:8B-21(b)(1)

### 1. N.J. Stat. § 46:8B-21(b)(2)

Section 46:8B-21(b)(2) requires that the condo lien on a unit be recorded prior to "the association's receipt of a summons and complaint in an action to foreclose a mortgage on that unit." N.J. Stat. § 46:8B-21(b)(2). Ms. Holmes argues that Community failed to obtain priority because the mortgagee filed two complaints in foreclosure before any of Community's liens had been recorded. (DE 5, p. 19–23).

It is true that the mortgagee filed two foreclosure actions: one on August 18, 2008, and one on March 20, 2009. Those foreclosure actions were dismissed, however, on January 26, 2012 and January 24, 2013. *See* Sections I.a(ii) & (iv), I.a.2 & 3, *supra*.

The first two of the liens in question—i.e., the December 2011 and March 2012 Liens, *see* Section I.a.vii, *supra*—were recorded when the mortgage foreclosure actions were filed and still pending.[17]

---

Second, the condo lien must be recorded prior to (a) "the association's receipt of a summons and complaint in an action to foreclose a mortgage on that unit" or (b) "the filing with the proper county recording office of a lis pendens giving notice of an action to foreclose a mortgage on that unit." N.J. Stat. § 46:8B-21(b)(2).

Third, when more than one condo lien is filed, "the total amount of the liens granted priority shall not be greater than the assessment for the six-month period" described *supra*. N.J. Stat. § 46:8B-21(b)(3). More than one condo lien can be filed "either because an association files more than one lien or multiple associations have filed liens." N.J. Stat. § 46:8B-21(b)(3). "Priority among multiple filings shall be determined by their date of recording with the earlier recorded liens having first use of the priority given herein." N.J. Stat. § 46:8B-21(b)(3).

Fourth, the limited priority "shall expire on the first day of the 60th month" following the date the lien was recorded. N.J. Stat. § 46:8B-21(b)(4).

Fifth, if one condo lien obtains priority over a recorded mortgage, for 60 months after that condo lien is recorded, no other condo lien will be granted priority over that same mortgage. N.J. Stat. § 46:8B-21(b)(5).

Sixth, "[w]hen recording a lien which may be granted priority pursuant to this act, an association shall notify, in writing, any holder of a first mortgage lien on the property of the filing of the association lien." N.J. Stat. § 46:8B-21(b)(6).

[17] I therefore set these two liens aside for the moment. Whether the subsequent dismissal of the foreclosures revived those first two liens for priority purposes presents a nice question, but one the Court need not decide. I say that because the total

The third and fourth liens, however, were recorded *after* the dismissals of the foreclosure actions. The last dismissal, as noted above, occurred on January 24, 2013. The September 2013 Lien (in the amount of $7375.28) was recorded nine months later, on September 25, 2013, and the March 2014 Lien ($9560.05) some fourteen months later, on March 21, 2014.[18] *See* Section I.a.vi, *supra*.

Doesn't matter, says Ms. Holmes. A lien recorded after the dismissal of a foreclosure action was perforce recorded after the service of the summons and complaint in that action. N.J. Stat. § 46:8B-21(b)(2)(a).

Too literal, said the bankruptcy court, and I agree. The statute appears to contemplate a filed and pending foreclosure, not a dismissed one. An already-dismissed foreclosure action should not bar priority under § 46:8B-21(b)(2). The foreclosure bar is seemingly intended to promote diligence, ensure that the relevant issues are considered together, and prevent the association from pulling the rug from under a mortgagee that is in the process of foreclosing. Community poses a persuasive *reductio* argument: "[I]f a foreclosure complaint were filed in 2001, dismissed in 2002 and a bankruptcy filed ten (10) years later, [the] same logic would apply and no priority could be given even though there was a dismissal of the foreclosure action conceivably, one, two, three, four, five or ten years earlier." (DE 6, p. 14).

Subsection (b)(2) could not have been intended to bar priority for all time merely because a foreclosure proceeding was brought and dismissed at some

---

statutory priority for multiple liens is limited to six months' worth of assessments. N.J. Stat. § 46:8B-21(b)(3). The September 2013 and March 2014 Liens, discussed immediately below, were filed when the foreclosures were no longer pending, and even considered alone, they appear sufficient to exhaust the statutory priority for six months' worth of fees.

[18]     The bankruptcy court found that the September 2013 and March 2014 Liens were timely recorded within 60 months of March 9, 2015, the date that Ms. Holmes filed for bankruptcy, another prerequisite for obtaining priority. (Bankr. Op. p. 45, citing N.J.S. § 46:8B-21(b)(4)).

time in the past. I read N.J. Stat. § 46:8B-21(b)(2)(a) to bar a condo association from obtaining priority only as to a foreclosure action that was pending when the association's lien was recorded. No foreclosure action was pending when the third and fourth liens (the September 2013 and March 2014 Liens) were recorded. They are therefore at least eligible for § 46:8B-21(b) super-priority, if the other requirements are met.

### 2. N.J. Stat. § 46:8B-21(b)(6)

Section 46:8B-21(b)(6) requires that, "[w]hen recording a lien which may be granted priority pursuant to this act, an association shall notify, in writing, any holder of a first mortgage lien on the property of the filing of the association lien." N.J. Stat. § 46:8B-21(b)(6). Ms. Holmes asserts that Community did not give the mortgagee timely notice of the recording of its liens, which therefore are not entitled to priority.

The requirement of notice "when" recording a lien does not mean that notice must be served at the precise moment of recordation, neither before nor after. It does not detract from the plain-meaning principle of interpretation to note that "when," a conjunction or adverb, is a multihued word. The bankruptcy court here correctly interpreted § 46:8B-21(b)(6) to require "simultaneous notice, or notice within a reasonable time thereafter, of the recording of the lien." (Bankr. Op. p. 30) The case law is in accord:

> [T]he property owner is entitled to constitutionally-guaranteed due process, as well as the process guaranteed by N.J.S.A. 46:8B-21. The only question concerns the amount of process due. In this court's view, the proper balancing of the rights of both a unit owner and a condominium association requires that the association provide simultaneous notice, or notice within a reasonable time thereafter, of the recording of the lien. Certainly, an association has a right to collect any appropriate fees through the coercive effect of a lien, but the purpose of any of these procedures is to insure payment of valid assessments to the association. How, it may be rhetorically asked, is that purpose enhanced by the association's ex parte filing of the lien? If, as here, the unit owner is deprived of knowledge that the lien has been filed, neither the force of its imposition increases the likelihood of

the association to be paid nor does it provide the unit owner with a minimal amount of due process in its imposition.

*Loigman v. Kings Landing Condominium Ass'n., Inc.*, 734 A.2d 367, 370 (N.J. Super. Ct. Ch. Div. 1999). *See also Wincenter Condo Ass'n, Inc. v. Berger*, No. A-4423-15T2, 2018 WL 1461711, at \*1 (N.J. Super. Ct. App. Div. 2018). In short, notice must be provided within a reasonable time.

With respect to the third, September 2013 Lien, Ms. Holmes objects that Community did not provide the mortgagee with notice until two weeks after recordation. (DE 5, p. 33–34). The bankruptcy court found that notice to be reasonable; Community, the court wrote, "provided sufficient documentary evidence of notice of the recording of the 2013 lien to both the Debtor and the Mortgagee to satisfy the notice requirements under N.J.S.A. 46:8B-21(a) . . . and (b)(6)." (Bankr. Op. p. 45). I agree. Community did not leave the mortgagee in the dark or unable to protect its rights; two weeks does not seem to be an unreasonable period of time; and Ms. Holmes points to no prejudice that accrued in the interim.

With respect to the fourth, March[19] 2014 Lien, Ms. Holmes argues on appeal that Community did not provide the mortgagee with notice. (DE 5, p. 34–35). Community did not submit evidence of notice, but on the other hand, Ms. Holmes seemingly did not contest the issue in the bankruptcy court, either. (*See* Bankr. Op. p. 46 n.8 ("At Oral Argument, Debtor's Counsel stated that he was offering no evidence to challenge the sufficiency of notice to the Debtor and Mortgagee of the recording of the 2014 Lien")).

The bankruptcy court did not actually rule either way as to notice of the March 2014 Lien; it was sufficient, wrote the court, that the September 2013 lien met the statutory requirements for priority. (*Id.* p. 46) I agree, but for a different reason. If the September 2013 Lien, standing alone, exhausted the

---

[19] Ms. Holmes incorrectly refers to the March 2014 Lien as being recorded in September 2014. (DE 5, p. 33).

maximum six months' worth of charges that are entitled to priority—and it appears that it did—then the priority analysis can stop there.[20]

For its liens, singly or in the aggregate, Community is entitled to no more than six months' worth of charges under N.J. Stat. § 46:8B-21(b), (b)(1), and (b)(3). The September 2013 Lien (also called the "Third Lien") covers, *inter alia,* maintenance fees for January–August 2013, an eight-month period. (*See* Bankr. DE 112 Feldman Cert. ¶ 13 & Ex. F). As Ms. Holmes calculates it, the portion of the statutory liens granted super-priority under § 46:8B-21(b)(1) and (b)(3) (*i.e.,* six months' worth of charges under the September 2013 lien) would total just $1839.00. I leave confirmation of the six-month period and the dollar amount, however, to the bankruptcy court on remand.

The remainder owing under Community's lien(s) must go to the back of the line, behind the undersecured mortgage, and to that extent must be considered unsecured claims. As such, they are subject to cram-down and would not stand in the way of a reorganization plan.

### iii. § 1322(c)

Ms. Holmes also argues that Community's claim is subject to modification under § 1322(c)(2) as a "short-term obligation." The bankruptcy court necessarily reached this issue because it found the claim could not be

---

[20]   The bankruptcy court's analysis was shaped by its view that the § 1322(b) anti-modification clause applied because the claim was secured only by a security interest. The court analyzed the priority provision to ascertain whether any part of the claim was secured *at all* (which it would not be unless it was elevated to a position senior to the undersecured mortgage). Under the bankruptcy court's view, such a finding would exert powerful leverage; if any part of the claim was secured, then the statutory bar to modification would apply to the *whole* claim—the "one dollar rule" of *In re Rones,* 551 B.R. at 168. *See* pp. 4–5, *supra.*

Under my view, however, the court's analysis would be beside the point, for two reasons: (1) the claim is not secured "only" by a security interest, so the § 1322(b) anti-modification clause does not apply; and (2) if the claim were secured only by a security interest, then the § 46:8B-21(b) priority boost, which pertains only to statutory liens, would not apply.

modified under § 1322(b)(2). (Bankr. Op. 46–48) Because I hold that the claim may be modified under § 1322(b)(2), I do not reach this issue.

## III.   CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court, insofar as it rejected the plan as not feasible and dismissed the Chapter 13 case, is reversed and the matter is remanded for further proceedings not inconsistent with this opinion. An appropriate order is filed herewith.

Dated:  May 21, 2019

HON. KEVIN MCNULTY, U.S.D.J.

## APPENDIX: N.J. Stat. § 46:8B-21(a) & (b)

a. The association shall have a lien on each unit for any unpaid assessment duly made by the association for a share of common expenses or otherwise, including any other moneys duly owed the association, upon proper notice to the appropriate unit owner, together with interest thereon and, if authorized by the master deed or bylaws, late fees, fines and reasonable attorney's fees; provided however that an association shall not record a lien in which the unpaid assessment consists solely of late fees. Such lien shall be effective from and after the time of recording in the public records of the county in which the unit is located of a claim of lien stating the description of the unit, the name of the record owner, the amount due and the date when due. Such claim of lien shall include only sums which are due and payable when the claim of lien is recorded and shall be signed and verified by an officer or agent of the association. Upon full payment of all sums secured by the lien, the party making payment shall be entitled to a recordable satisfaction of lien. Except as set forth in subsection b. of this section, all such liens shall be subordinate to any lien for past due and unpaid property taxes, the lien of any mortgage to which the unit is subject and to any other lien recorded prior to the time of recording of the claim of lien.

b. A lien recorded pursuant to subsection a. of this section shall have a limited priority over prior recorded mortgages and other liens, except for municipal liens or liens for federal taxes, to the extent provided in this subsection. This priority shall be limited as follows:

(1) To a lien which is the result of customary condominium assessments as defined herein, the amount of which shall not exceed the aggregate customary condominium assessment against the unit owner for the six-month period prior to the recording of the lien.

(2) With respect to a particular mortgage, to a lien recorded prior to: (a) the receipt by the association of a summons and complaint in an action to foreclose a mortgage on that unit; or (b) the filing with the proper county recording office of a lis pendens giving notice of an action to foreclose a mortgage on that unit.

(3) In the case of more than one association lien being filed, either because an association files more than one lien or multiple associations have filed liens, the total amount of the liens granted priority shall not be greater than the assessment for the six-month period specified in paragraph (1) of this subsection. Priority among multiple filings shall be determined by their date of recording with the earlier recorded liens having first use of the priority given herein.

(4) The priority granted to a lien pursuant to this subsection shall expire on the first day of the 60th month following the date of recording of an association's lien.

(5) A lien of an association shall not be granted priority over a prior recorded mortgage or mortgages under this subsection if a prior recorded lien of the association for unpaid assessments has obtained priority over the same recorded mortgage or mortgages as provided in this subsection, for a period of 60 months from the date of recording of the lien granted priority.

(6) When recording a lien which may be granted priority pursuant to this act, an association shall notify, in writing, any holder of a first mortgage lien on the property of the filing of the association lien. An association which exercises a good faith effort but is unable to ascertain the identity of a holder of a prior recorded mortgage on the property will be deemed to be in substantial compliance with this paragraph.

For the purpose of this section, a "customary condominium assessment" shall mean an assessment for periodic payments, due the association for regular and usual operating and common area expenses pursuant to the association's annual budget and shall not include amounts for reserves for contingencies, nor shall it include any late charges, penalties, interest or any fees or costs for the collection or enforcement of the assessment or any lien arising from the assessment. The periodic payments due must be due monthly, or no less frequently than quarter-yearly, as may be acceptable to the Federal National Mortgage Association so as not to disqualify an otherwise superior mortgage on the condominium

35

from purchase by the Federal National Mortgage Association as a first
mortgage.

N.J. Stat. § 46:8B-21(a) & (b).

Under the recently amended version of the statute, sections (1), (4) and
(5) have been changed so that the "limited priority may be cumulatively
renewed on an annual basis as necessary." NJ LEGIS 68 (2019), 2019 NJ Sess.
Law Serv. Ch. 68 (ASSEMBLY 5002) (WEST).